Morning we call the next case please. 3-13-0-6-4-1, consolidated with 3-13-0-6-4-2, People of the State of Illinois, Affiliated by Richard Leonard v. Larnell Weston, Internell Weston, Appellants by Mario Clattis. Mr. Clattis? Morning Your Honors, Counsel. May it please the Court, my name is Mario Clattis, I'm an Assistant Appellate Defender with the Office of the State Appellate Defender. I represent the defendant appellants, Larnell and Internell Weston. The Westons and their co-defendant, Roncheno James, were convicted of home invasion, armed robbery, and residential burglary after a bench trial. And the Westons were sentenced to 23 years in prison. On appeal, the Westons have argued three things. First, that they weren't proved guilty beyond a reasonable doubt. Second, that incriminating DNA evidence was improperly admitted against them at trial. And third, that trial counsel was ineffective because counsel failed to present available exculpatory DNA evidence at trial. Today I'm going to be focusing on these second two issues, and I'll actually be taking them in reverse order from how they were briefed. But if the Court has any questions about the reasonable doubt claim, of course I'll do my best to answer those. So this case basically presents two different DNA issues. The first is DNA that should have been presented to the trial court but was not, and that's the major male DNA profile on the vests in the camcorder that did not come from the defendants or their co-defendant. The second is DNA that should not have been presented or admitted to evidence but was, and that's Turnell Weston's DNA on the mask the police found outside the apartment complex. So as to the first issue, the DNA on the vests in the camcorder, the state recovered two bulletproof vests in the woods near the guns that were used to commit the crimes in the property that was stolen from the victim. Trial, the state's theory was that the perpetrators wore the vests and used them to gain entry to the victim's home. Forensic evidence supported this theory. The same major male DNA profile was found on both of the vests and the camcorder that was stolen from the victim. The state's experts determined that this DNA profile... Can I interrupt you? Sure. The same DNA on both vests and the camcorder all belonging to the same person. My understanding is that that is what a major male profile would indicate. So the state's experts determined this several months before trial. They gave copies of their reports. There were two different experts who analyzed the DNA. Both the reports were given to defense counsel several months before trial. The notification of the reports was actually hand-delivered to counsel, so there's no question that the defense had these reports in their possession. The expert who did the ultimate analysis and who ultimately determined that the DNA came from someone else, she testified at trial, she used her report to answer questions. And defense counsel failed to ask her about her conclusions as to the DNA on the vests and the camcorder, or to otherwise get her findings into evidence. This was objectively unreasonable. The defense's entire theory of the case was that someone else committed these crimes. The expert's analysis supported that theory because it indicated that someone else both wore the vests and touched this camcorder that was stolen from the victim. In other words, that someone else committed the crimes. The expert's analysis by itself could have created reasonable doubt in this case. And the expert testified at trial, so all defense counsel had to do was ask her about her findings. This isn't even a case where the defendants had to try to get their own expert. They had one there. They just had to ask her what she found in this case. On appeal to these points, the state responds two different things. First, that the prosecution presented no evidence that the vests were used to commit these crimes. And second, that the DNA on the camcorder probably belonged to the owners of the camcorder or a family member. If that's true, though, then it means the owners also wore the vests. If that's true, it might mean that. There's no reason to believe that this DNA came from the owners of the camcorder. This actually gets to, the state doesn't elaborate on its theory in the brief. But if the DNA on the vests in the camcorder, I mean, let's say that the camcorder, the DNA on the camcorder belonged to the owners of the camcorder or a family member. If that's true, for the state's theory on appeal to be correct, that means the DNA from there was transferred somehow to the vests. There's no reason to think the vests were worn by the victim. The state, again, flat out told the court the perpetrators used these vests to get into this house. If the prosecutors had any information that indicated these vests were worn by the victim, they would have had to tell the court, they would have had to tell defense counsel. And if you read the trial transcript, defense counsel clearly tried to get testimony from the witnesses to show that the vests were connected to this crime. And so if counsel had information that the vests were worn by the victims or belonged to the victims, counsel could have just gone that way and gotten it out that way. And so what the state's really arguing is that, again, that the DNA, if it belonged to the owners of the camcorder, for it to be in the vest, there has to be some kind of inadvertent transfer, either at the police station, when it was recovered. Isn't there another theory that's equally plausible as the state's theory that the owner touched the camcorder? Perhaps the officer that handled the evidence is the major profile on the camcorder and each vest. That is possible. The problem, though, is that even if that's true, defense counsel would have been ineffective for failing to present it because counsel's major argument with respect to the mask or the DNA on the mask, Turnell's DNA, was that it was inadvertently transferred. So even if the state's theory on appeal is correct, and even if that's true, competent counsel would have sought to put that in. If you are a defense attorney and you're arguing this DNA on the mask, yeah, it's Turnell's DNA because there's no dispute that it's Turnell's DNA, but it got there by accident because the police mishandled it. If you could point to other evidence in the case, for example, the DNA on the vest in the camcorder, that would greatly strengthen your argument with respect to the mask. So if you are the defense attorney in that situation, you cannot fail to present this evidence to the trial court. And if you do, it's only because you are not performing objectively reasonably. And so, again, yes, the state argues that the vests weren't used to commit these crimes. Prosecutors thought they were. The police officer who recovered the vest clearly thought they were because he was asked about it, and his explanation for the victim not mentioning the vest was that the perpetrators burst in shouting police. Judge, what was that? Speak slowly. I'm having a hard time here. Sorry, Your Honor. Officer Glowinky, the officer who recovered the vest, he testified at trial, and defense counsel tried to get him to say, basically, that the victim didn't mention seeing vests. And in response to this questioning, Officer Glowinky told the court, no, she didn't mention vests, but she did say that they burst in shouting police. The clarification is that they were pretending to be police officers, and this was the prosecutor's theory at one of the three trial hearings. He told the court this, that they entered the house using these vests. And, of course, also with respect to the evidence for the vest, the state elicited testimony from Officer Glowinky related to the recovery of the vest, the transport of the vest to the police station, the bagging and sealing of the vest for evidence, all of which contrasted pretty starkly with the custody chain for the mask, which didn't really include any of those things. Were the vests placed in an evidence locker after they were sealed, before they were transported to the lab? I believe Glowinky testified that he put them in the evidence envelopes and sealed them for evidence. And I think he was asked, did you sign the tape? So there is no problem with chain of custody on those three exhibits? I do not believe so, no. And certainly defense counsel did not object to the custody chain for these items. So at this point, it's a little late in the game, I think, for the state on appeal to be arguing that there was no evidence to connect these vests to the crimes. And they're really only arguing it now because the defendants have pointed out that someone else's DNA was on these items. As to the source of the camcorder, again, the state's theory on appeal just doesn't address the question of how DNA on the camcorder could have gotten onto the vest, or how DNA on the vest could have gotten onto the camcorder. Either way, we're talking about an inadvertent transfer of DNA that would have strongly supported counsel's argument with respect to Turnell's DNA being on this mask. So turning to the mask. So the police find a mask. So the defendants are arrested at 717 Sondra. The police find a mask at 701 Sondra, which is on the opposite side of the apartment complex from where the defendants are found. There's no issue that Turnell's DNA is on it. The only question is whether his DNA was on it when the police found it, or whether it got on there by accident because it was mishandled. At trial, defense counsel objected to the DNA on the mask because the custody chain wasn't sufficient. Again, the state presented evidence that, with respect to other items in the case of how they were recovered, how they were transported, how they were sealed for evidence, but not with the mask. Some contested that the mask remained unsealed 20 hours after the defendants were arrested. And a video clearly shows one of the investigating officers, Sergeant Box, handling it with his bare hands. We don't know who gave the mask to Sergeant Box. We don't know what was done with it before or after he handled it. We don't know what he was doing at that time. We don't know, for example, if he would have been touching Turnell Weston. At some point on February 19th, when the defendants were arrested, Officer Glowinky said he put the mask in evidence, but he testified that he didn't sign the envelope it was in, and he didn't seal it. Five months later, Investigator Jermaine Jones, who handles the evidence locker, encounters the mask. It's in an envelope, and it's sealed. He testified that he believed it was sealed on the day he encountered it, 7-14-11, because that was the date that was on the envelope when he found it. And that, I guess, normally indicates the date when it would be sealed for evidence. And so we know, basically, from this testimony, that the mask, when Jones encounters it, is not in the same condition it was when it left Glowinky's possession. Because, again, Glowinky testified he did not put it in an evidence envelope, and he didn't seal it for evidence. But when Jones finds it, it is already in the envelope, and it's already sealed. And there's a gap of five months. Five months between the arrest and when Jones picks up the mask and takes it to the crime lab. Who handled the mask when it was displayed to the victim, the female victim, during her interview at the police station? That would be Sergeant Box, one of the investigating officers, now Deputy Chief Box, I believe. So it wasn't in an envelope at that time. It appears from the video that it's in some kind of paper bag, and Chief Box, Sergeant Box, reaches into the bag, takes it out, and displays it. You can't really see what it is in the video, but Officer Glowinky testified that the item in Chief Box's hand was the mask that was presented at trial. And were the defendants in custody and in the same building? Yes. The prosecutor is in the case. So we know that the mask is in a different condition, because now it's sealed in an envelope when Jones gets it. So basically, the only established links we have in the custody chain are Officer Glowinky recovering it at the apartment complex, five months later, Jones signing it and bringing it to the crime lab, and in between, Sergeant Box touching it with his bare hands. Those are the only three points that we know for sure. The prosecutors in this case acknowledged in court that the mask wasn't handled ideally and that there was arguably an opportunity for contamination because the officers had had the defendants in their cars and had, quote, touched people. The prosecutors even acknowledged what they described as inconsistent police work out of the University Park Police Department. And on appeal here, the state doesn't really contest the description, the defendant's description of the custody chain. Instead, the state argues that the defendants haven't rebutted what the state calls the presumption that the police took reasonable protective measures. There is no such presumption under the law. It's the state's initial burden to establish that it took reasonable protective measures. And the burden to show actual contamination or tampering only shifts to the defendants once the state shows that it took reasonable protective measures. And here, without more information regarding what exactly the police did with the mask before Jones brought it to the crime lab, the trial court couldn't rationally find that the state met its burden. All the court could do was presume that the state did. And again, the law doesn't allow that presumption. And that presumption would be especially inappropriate here because we have a video of a police officer, one of the investigating officers, failing to take probably the most important reasonable protective measure you can take, and that's not touching potential DNA evidence with your bare hands. Sometimes, though, the rules are relaxed just a little bit when the item is unique. When the item is unique and readily identifiable. When the victim looked at the black mask, did she say it was the black mask because of its unique characteristics? The victim did not identify at a trial, and in fact, she testified that the police did not show her a mask. So the court ultimately found when it announced the verdict that it had no identifications whatsoever in the case. And again, the victim's trial testimony is pretty clear. She didn't identify it. She testified she never saw one. Glowinky testified that it was shown to her, but she did not remember that. So because the state didn't make out its prima facie case that it took reasonable protective measures, the burden never shifted to the Westons to show actual contamination or tampering, and the DNA on the mask should not have been admitted. The court therefore erred when it admitted the DNA on the mask and relied on it in finding the defendants guilty. As to prejudice, we've argued in the briefs that the evidence was closely balanced. I think the key point is time is short. We have no identifications here. The defendants were never identified as the perpetrators. No fingerprints or DNA connect them to the items found in the woods or the stolen property. The money on them didn't match the denomination stolen, reported stolen. The mask the police found, again, was found in a place that no one saw the defendants or anyone else, and it was never really explained how the mask got on the opposite side of the building, given where the defendants were first encountered. And ultimately, again, for the reasons argued in the briefs, the evidence is closely balanced here, and these errors would have made a difference. Thank you. I'm sorry, I'm done. Okay. No questions. Mr. Leonard? May it please the court, counsel, if you may, I will just go into a short summary of the facts. This is the case of circumstantial evidence, but the circumstantial evidence is overwhelming that the Westons were two of the three people who committed the home invasion, armed robbery, and residential burglary. The victim testified that the perpetrators were three black men. The circumstantial evidence also showed that they were all wearing dark-colored clothing. They were located in the vicinity of the crime. Within 30 minutes, officers testified that one of the defendants had leaves and branches in his hair. They also testified that they appeared to be perspiring and out of breath, as if they had been running. Did the officer know which one had the leaves and branches? He didn't say which one. And their hair was disheveled. He's assuming all of their hair was disheveled, I guess, when he uses the term there. They had dirt on their clothing and boots, which suggested that they had been in the woods where the perpetrators had fled. Ms. Fulop testified that she had $200 and $20 bills that they were taken by the perpetrators when the three men were arrested. Rochino James had $80 plus two singles, and the other Weston brothers had $60 each, all in 20s. A pretty strong inference there that the money came from Ms. Fulop. But there is a difference between what was inventoried and taken from the men and what, you know, there must have been a dramatic moment in the courtroom when you counted the money out that was sealed and there were extra $5 bills. Yes, Will County didn't do a very good job. The police officers had secured the evidence, but it was the testimony at trial which is overwhelming. So do you think this is still a piece of evidence that points circumstantially to all three, the money? Yes. The officer standing guard near Sandra Drive saw the three black men walking behind him. He told them to stop and they ignored him, told them to stop a second time, and they fled into the building right there. Fleeing is evidence of guilt. Were they out of breath before they fled, according to the officer's testimony? No, when the officer arrived at the apartment, when he saw the defendants there, that's where he said that they looked like they had been running. But I question whether that circumstantial evidence, because he watched them running up flights of steps from the outside, why do you think that circumstantial evidence, the fact that they were out of breath, what makes it relevant for you? Because the officer who saw the defendants or perpetrators run up these stairs was not the officer who testified that they were perspiring and out of breath. I don't remember the officer's name who saw the perpetrators run, but it was Glowwinkle who testified to their appearance. Well doesn't that just go to identify or to corroborate that there were three black men who refused to stop for an officer and ran and then disappeared into an apartment building? That's part of the circumstantial evidence. Circumstantial evidence of fleeing for guilt, circumstantial evidence that three black men committed home invasion in the area within 30 minutes and then they're found a short distance away, three black men who met the description of wearing dark clothing run away when the officer tells them to stop. So it's really, back to my original point, very simply, it's circumstantial evidence that the three black men that were in the apartment were the same three black men that disobeyed a police officer's order to stop. Absolutely correct. That's all the further it goes though, isn't it? Yes. But how does that then link the three to the crime? Well the inference is that those were the three men who committed the crime based on all this other evidence that I just mentioned. There was also testimony from the victim that the perpetrators were small-framed. One had hazel eyes, they all had dreadlocks, and one was cross-eyed. One of the Weston boys was cross-eyed and clearly the victim saw that he was cross-eyed and one of the perpetrators, one of the Westons, was cross-eyed. I think there's a pretty strong inference right there that all three of them were involved in the crime where they found together. I don't believe that being cross-eyed is a common trait. I think it's a distinctive trait. So considering all of this evidence and the like, most favorable to the people, any rational trier of fact would have found these defendants guilty beyond a reasonable doubt. That leads me to the ineffective assistance claim and the ski mask. The body armor is really a red herring. The defendant or the victim never testified that these perpetrators had body armor on. No police officer testified that they had body armor on. This was merely body armor that was found out in the woods along with some of the proceeds of the armed robbery. Did the judge receive testimony that the body armor was found with the camcorder? Yes, I believe that was the testimony. Officer Glowinkle did a search that evening and I believe that was found. He did a further search in the morning when it was light and he may have found more out. Following up with the ineffective assistance of counsel argument, if you agree that the body armor is a red herring, shouldn't defense counsel have fortified that position by saying the DNA on those vests isn't tied to my guys? It's a red herring. How does the judge know? That's the first prong of Strickland and I have no disagreement that maybe counsel did act objectively unreasonable by not presenting that DNA evidence. But we have the second prong of Strickland and he can't meet the prejudice prong because there's not a reasonable probability that the outcome of the trial would have been different even if this evidence was presented. I believe the circumstantial evidence was overwhelming. The body armor had really nothing to do with this. It doesn't matter whose DNA was found on it. And the camcorder had some DNA on it so we don't know what that is but really it's irrelevant in this trial considering the overwhelming evidence because the defendant can't meet the second prong of this Strickland test. You suggested in your brief that the DNA on the camcorder came from the victim. Could have come from the victim or the victim's family. The victim's a woman. Yes. And there was a 12 year old boy in the household. Yes. Were there any other men in the household? Not at the time of the robbery. We don't know who lived there but we know that Dorothy lived there with her 12 year old son and they were home when this crime happened. But my argument here is the defendant can't meet the second prong of this Strickland test based on my recitation of the summary of the facts here. I'm just wondering what it does to your theory though about the DNA isn't relevant if the DNA belonged to the 12 year old boy on the camcorder then it also belonged to the 12 year old boy on the vest and to me that's not really a plausible theory. Well we don't know who the DNA belonged to and it's really not relevant here because nobody testified to the defendant's wearing body armor. I don't know why the prosecutor chose to present the I appreciate that you're confined to the record. Yes and my argument simply is it's not an effective assistance of counsel here because you can't meet the prejudice prong. With regard to the chain of custody on the ski mask of course Turnell's DNA was found on that but during my summary of the facts here I left out the ski mask and the body armor. So even considering those items were not in the summary of the facts, the facts are sufficient for the jury or for the trial judge here to find the defendant's guilty not even including those facts. The DNA issue on the ski mask was not forfeited so a plain error analysis or closely balanced analysis doesn't apply because defense counsel did object to the chain of custody on that ski mask. Am I correct? Not entirely correct. I argue that the issue was forfeited because the defense attorney objected to having that brought into evidence but there was never a ruling on his motion. It's the person who, the movement who has an obligation to have that motion ruled upon and it was never ruled upon by the trial judge. Did the judge make any remarks about the ski mask? The trial judge did consider the DNA on the ski mask as evidence of the crime but my argument here is that even without considering the ski mask the evidence is overwhelming and this court should uphold the defendant's convictions and of course the defendant did not ask for plain hair as you can see here. And with regard to the sufficient chain of custody that goes to weight not to admissibility so even if you want to consider the ski mask the trial judge properly allowed the ski mask in even though the chain of custody was not proper. I simply argue here that the ski mask is not relevant. There is sufficient other evidence to find these defendants guilty beyond a reasonable doubt. I go to a very detailed information in my brief on all of the evidence and I direct your attention to that. Other than that I ask that you affirm the defendant's convictions. Mr. Flannis. Yes your honor. Briefly with respect to whether the custody chain issue was forfeited the defendants objected at trial. The issue was raised in their post trial motion. The judge did not implicitly rule on it before they filed the post trial motion but there was some confusion in the court over whether defense counsel's motion for there comes a point where there is some argument going on in the case and it wasn't clear whether they were doing closing arguments or whether they were doing renewing the motion for directed verdict at the close of all the evidence. And I think defense counsel misunderstood what was going on. And the next day the court immediately came in and announced the verdict. But either way the issue is raised in the post trial motion. That is all that has to happen here to preserve this issue for review. And in any event we did in fact ask for a plain error review should the court find that the issue was preserved we asked the court to consider it under plain error. What did you say? I'm sorry your honor. Repeat what you just said. We did ask for a plain error review in the reply brief if the court were to determine that the issue was not preserved. Was not preserved. Okay I just didn't hear you say not preserved. I'm sorry your honor. So I mean the state's argument with respect to whether the evidence was overwhelming there's a couple things in the address. First of all officer McMahon never said that he saw three black men outside the apartment complex. He was asked directly how are the people you saw similar to the people inside the apartment. And all he said was they all wore dark clothes. He didn't even say they were men. So he did not say that he did not testify that he saw three black men outside that building. The state presented no you know the perpetrators wore hoodies. The state presented no evidence that the defendants were wearing hoodies in that apartment. The state presented no evidence of dirt on the defendants clothes even though they took the defendants clothes and took at least one shoe from the apartment. With respect to the defendants sweating and being out of breath the trial court did not accept the officers testimony as to the sweating. She corrected a prosecutor at one of the post trial hearings when he argued that the defendants were perspiring. She told him flat out not perspiring. And possibly one of them had twigs or leaves in his hair but that was it. And the other officer the one who testified. We don't know which one and we only have two defendants in this. Yes. They didn't specify which one that was. And also not specified. So the appellate prosecutor argues that the trial evidence showed that one of the Western court made was that the victim testified one of the defendants had something different about his eyes. That was it. And there was various testimony that one of the perpetrators had hazel eyes. One of them had crossed eyes. She differed. I mean her testimony is not clear. And it was different from what she seemed to be saying in the video of her evidence or clear evidence at trial that we don't know what's going on with the eyes. We just don't. Because the court didn't really make any specific findings. I'd like to ask a question about the body armor and the camcorder. All three of those items had the same DNA. Yes. And it's probably reasonable to assume or it would be unreasonable to assume probably that one person wore both pieces of body armor. Yes. And so it would be very likely that one person contaminated all three of those pieces. It's possible. And it's unlikely that a 12 year old boy would have access to the body armor. I would agree that it's unlikely. And maybe the most reasonable presumption would be that a police officer would have that evidence and would also explain the DNA not being in the database. That would explain it. And again though, I'm sorry Your Honor. So the police, there are no defendants DNA on this stuff. Nobody else except one person on each three pieces. How does that really help the defendant? I think one way to think about this is if Turnell's DNA wasn't found on the mask but was found on both of these vests and the camcorder, I would not have raised a reasonable doubt issue. I wouldn't have a custody chain issue and I probably wouldn't be here today. I understand that. But in light of the fact that there's evidence that there DNA isn't on body armor, how does that, but there's no, somebody, it's safe to assume that more than one person had contact along the way with those two pieces of body armor for example, yet there's only one person's DNA on those pieces. So how does that point away from the defendants? Well again, it either shows that, again, if Turnell's DNA were on those things, there would be strong evidence he was involved. And likewise, whoever's DNA is on those things on the camcorder, assuming it's not a police officer who mishandled the evidence, strongly suggests that that person was one of the three people who did this crime, not any of the defendants, which means a different group of three. Second, even if that's correct, again, it strongly supports counsel's arguments with respect to the mask, because evidence that the items were mishandled to the point that DNA, major male DNA profiles, are being inadvertently transferred, strongly undercuts the state's custody chain for the mask and strongly supports counsel's argument that the DNA on it shouldn't have been admitted. So either way, that evidence is helpful for the defendants regardless of how it got there. So again, ultimately, we have no identifications in the case as to whether the defendants were small-framed. The state presented no evidence for that, no evidence of who was cross-eyed or had hazel eyes. The state also presented no evidence at trial that they had dreads when they were arrested. I think given all this, it won't do to argue that the evidence was overwhelming. I mean, if this is overwhelming evidence, then that word doesn't mean anything. The evidence here was closely balanced. We are arguing it wasn't even enough to convict. But even if it were, this is close enough that failing to introduce the DNA on the vest and the camcorder and the mishaps with the custody chain for the mask, either one of those things could have tipped this against the defendants, and that's why they should be getting a new trial. Could have tipped it against the defendants? The failure to present the DNA on the vest and the camcorder could have tipped this case against them. Likewise, the courts admitting the DNA on the mask could have tipped this against them. Are you requesting a new trial, or are you requesting that the evidence was insufficient and a double jeopardy attempt? We're arguing, again, we're arguing the reasonable doubt claim. So we think the conviction should be reversed outright. We've also argued that without this mask, there isn't any concrete evidence linking the defendants to this crime. And without it, basically, the state couldn't convict them. So we argue alternatively, with respect to the mask, that the court could reverse outright or grant them a new trial. Okay, we're done, I guess. Thank you both for your arguments here this morning. The matter will be taken under advisement. A written disposition will be issued. Right now, we'll be in a brief recess for a panel session.